IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KATHERINE SCHERCK,          *

                *

       Plaintiff,        *

                *

       vs.             *      Civil Action No.   ADC-23-1605

                *

THE JOHNS HOPKINS       *

UNIVERSITY                 *

APPLIED PHYSICS         *

LABORATORY LLC,         *

                *

       Defendant.      *

                *

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## <u>**MEMORANDUM OPINION**</u>

Defendant The Johns Hopkins University Applied Physics Laboratory, LLC ("APL") moves this Court to dismiss Plaintiff Katherine Scherck's Complaint. ECF No. 17.[1] After considering Defendant's Motion and the responses thereto (ECF Nos. 17, 18, 25) the Court finds that no hearing is necessary. Loc.R. 105.6 (D.Md. 2023). For the reasons stated herein, Defendant's Motion is GRANTED.

## <u>**Factual and Procedural Background**</u>

When reviewing a motion to dismiss, this Court accepts as true the facts alleged in the challenged complaint. *See Williams v. Kincaid*, 45 F.4th 759, 765–66 (4th Cir. 2022).

---

[1] On June 15, 2023, this case was assigned to United States Magistrate Judge A. David Copperthite for all proceedings in accordance with Standing Order 2019-07. ECF No. 3. All parties voluntarily consented in accordance with 28 U.S.C. § 636(c). ECF No. 16.

APL hired Plaintiff as a full-time Mechanical Designer in July 2019. ECF No. 1 at ¶ 2. Plaintiff became pregnant in 2021 and was expecting to give birth in January 2022. *Id.* The pregnancy was deemed "high risk" given Plaintiff's age, elevated blood sugar, anxiety, depression and hypothyroid condition. *Id.* at ¶¶ 2, 20. On September 14, 2021, APL instituted a Covid-19 vaccination requirement for all employees. *Id.* at ¶ 3. The policy required staff to receive an initial vaccination dose and provide a receipt to APL by October 15, 2021. *Id.* At the time that the policy was put into place, Plaintiff was designated as a full-time work-from-home employee. *Id.* at ¶ 23.

On September 16, 2021, Plaintiff submitted an "Employee Request for Medical Accommodation" form requesting an exemption from the policy. *Id.* at ¶¶ 4, 25. Plaintiff's form included a note from her treating physician, Dr. Vivien To, stating that, due to Plaintiff's high-risk pregnancy, she should delay receiving the vaccination until the end of her pregnancy and breastfeeding period. *Id.* While reviewing Plaintiff's accommodation request, Dr. Clarence Lam, APL's Accommodation Coordinator and Medical Officer, reached out to Dr. To. *Id.* at ¶¶ 29–30. Plaintiff contends that Dr. Lam "pestered, harassed, and repeatedly attempted to contact [her] treating physician" to dispute the medical necessity of an accommodation. *Id.* at ¶ 30. On November 30, 2021, APL denied Plaintiff's request and informed her that she should become vaccinated by December 7, 2021. *Id.* at ¶ 5. Plaintiff chose to remain unvaccinated, and she was terminated from her position at APL on December 7th. *Id.* at ¶ 5–6.

Following her termination, Plaintiff filed a complaint with the Baltimore Office of the Equal Employment Opportunity Commission ("EEOC"). *Id.* at ¶ 15. On March 16,

2

2023, the EEOC issued a "Notice of Right to Sue" letter. *Id.* at ¶ 16. On June 14, 2023, Plaintiff filed this lawsuit against APL alleging discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 (Counts I, III and IV); discrimination in violation of the Americans with Disabilities Act (Count II); and wrongful termination under Maryland law (Count V). *Id.* Defendant filed the present Motion to Dismiss on August 18, 2023. ECF No. 17. Plaintiff responded in opposition on September 1, 2023, and Defendant replied on September 15, 2023. ECF Nos. 18, 25.

**DISCUSSION**

**Standard of Review**

The purpose of a Rule 12(b)(6) motion is to test the sufficiency of the Complaint, not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). Upon reviewing a motion to dismiss, the Court accepts "all well-pleaded allegations as true and construe[s] the facts in the light most favorable to the plaintiffs." *In re Willis Towers Watson plc Proxy Litig.*, 937 F.3d 297, 302 (4th Cir. 2019) (citations omitted). However, it does not accept as true legal conclusions couched as factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). The Complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Facial plausibility exists when Plaintiff "pleads factual content that allows the court to draw the reasonable inference that

3

[Defendant] is liable for the misconduct alleged." *Id.* An inference of a "mere possibility of misconduct" is not sufficient to support a plausible claim. *Id.* at 679. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555.

## Exhaustion of Administrative Remedies

"Before a plaintiff has standing to file suit under Title VII, he must exhaust his administrative remedies by filing a charge with the EEOC." *Bryant v. Bell Atlantic Maryland, Inc.,* 288 F.3d 124, 132 (4th Cir. 2002); *see also* 42 U.S.C. § 2000e–5(b). The allegations in the charge generally limit the scope of any subsequent judicial complaint. *EEOC v. Phase 2 Invs., Inc., 310 F.Supp.3d 550* (D.Md. 2018) (quoting *Evans v. Techs. Applications & Serv. Co.,* 80 F.3d 954, 962–63 (4th Cir. 1996). "If the claims raised . . . exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof, they are procedurally barred." *Chacko v. Patuxent Inst.,* 429 F.3d 505, 509 (4th Cir. 2005) (quoting *Dennis v. County of Fairfax,* 55 F.3d 151, 156 (4th Cir. 1995). However, because lawyers do not typically complete the administrative charges, courts construe them liberally. *Alvarado v. Bd. of Trs. of Montgomery Cmty. Coll.,* 848 F.2d 457, 460 (4th Cir. 1988)."If the factual allegations in the administrative charge are reasonably related to the factual allegations in the formal litigation, the connection between the charge and the claim is sufficient." *Smith v. First Union Nat'l Bank,* 202 F.3d 234, 247–48 (4th Cir. 2000).

Plaintiff's EEOC charge states:

"I. I worked for the above listed employer as Mechanical Designer under the supervision of David Napolillo. In August 2021, I learned that I had a high-risk pregnancy. Also, during that time, I was advised that I needed to obtain the Covid-19 vaccine. I worked from home and my position did not require face-to-face contact with others. On September 16, 2021, I requested as an exemption not to obtain the vaccine until I returned from maternity leave, as I did not want to have any further risk to my unborn child. In November 2021, I learned that my request was denied without explanation[.] On December 7, 2021, I was discharged. II. I was advised that I was discharged because I did not receive the vaccine by the October 15, 2021, deadline. III. I believe that I was discriminated against after I was discharged due to my sex/female (pregnancy), and disability in violation of Title VII of the Civil Rights Act of 1964, as amended and in violation of the Americans with Disabilities Act of 2008."

ECF No. 17-2.

APL asserts that Plaintiff has failed to exhaust her administrative remedies with respect to her claims of retaliation and disparate impact. I agree.

Retaliation (Count III)

The Fourth Circuit has repeatedly held that failing to mention retaliation in an administrative charge narrative indicates that an administrative remedy has not been exhausted with respect to that claim. *Cowgill v. First Data Techs., Inc.*, 41 F.4th 370 (4th Cir. 2022) (finding that plaintiff's failure to mention retaliation supported the conclusion that her charge did not include a retaliation claim); *see also Miles v. Dell, Inc.*, 429 F.3d 480 (2005). In the present case, Plaintiff's charge makes no mention of retaliation, and her response brief is silent regarding this omission. Instead, she merely contends that "[a]ll Counts and causes of action in the Complaint are brought under the same factual allegations" as those in the charge, and that her causes of action are reasonably related to her charge such that they should not be dismissed. ECF No. 18.

5

I am unpersuaded. The administrative remedy exhaustion standard is *not* whether the facts underlying the charge and the claim are the same, but rather whether a plaintiff's claims are reasonably related to her charge and are within "the scope of the administrative investigation that can reasonably be expected to follow the charge. . . ." *Miles*, 429 F.3d at 491 (quoting *Bryant*, 288 F.3d at 132); *see also Chisholm v. United States Postal Serv.*, 665 F.2d 482, 491 (4th Cir.1981). This standard works to ensure "that the employer is put on notice of the alleged violations so that the matter can be resolved out of court if possible." *Miles*, 429 F.3d at 491.

Plaintiff's charge does not remotely allege that APL retaliated against her because she requested an accommodation from the vaccination policy, nor does it allege facts that would have put APL on notice that she was charging it with retaliation. *See id.* at 492. Plaintiff charges that she was terminated after requesting an accommodation, but without further detail, the series of events "do not necessarily imply that [APL] was motivated by a retaliatory impulse." *Cowgill*, 41 F.4th at 384. Plaintiff's retaliation claim is not reasonably related to her charge such that it would have been expected to follow from an investigation, and I therefore find that Plaintiff has failed to exhaust administrative remedies for the retaliation claim. *Id.* Defendant's Motion to Dismiss is GRANTED as to Count III of the Complaint.

Disparate Impact of the Basis of Sex (Count IV)

Title VII disparate impact claims "involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity." *Abdus-Shahid v. Mayor and*

6

*City Council of Baltimore*, 674 F. App'x 267 (4th Cir. 2017). To exhaust administrative remedies for a disparate impact claim, an administrative charge must allege or identify a supposedly discriminatory policy. *Iwebo v. Sheppard Pratt Health System, Inc.*, No. BPG-19-3008, 2021 WL 1733464, at *4 (D.Md. May 5, 2021). In *Abdus-Shahid*, the Fourth Circuit held that the plaintiff did not exhaust his administrative remedies when his charge (1) did not identify any policy being challenged as discriminatory in its effect and (2) did not assert any facts that would allow a conclusion that members of his protected class were being disproportionately impacted by the defendant's actions. *Abdus-Shahid*, 674 Fed.Appx. at 275. Further, in *Cunningham v. Adventist Healthcare, Inc.*, No. TJS-19-2831, 2021 WL 662183, at *1 (D.Md. Feb. 19, 2021), this Court held that plaintiff had not exhausted her administrative remedies when her charge made "no mention of [the defendant's] alleged employment policy or any disparate impact of the policy."

In the present case, Plaintiff's charge contains the same defects as those in *Abdus-Shahid* and *Cunningham*. *See* ECF No. 17-2. Plaintiff does not contend that the vaccination policy was discriminatory in its effect, nor does she put forth any facts that would allow a conclusion that other members of her protected class—pregnant women—were being disproportionately impacted by APL's vaccination requirement. *Id.*; *Cunningham*, 2021 WL 662183, at *4. I find that Plaintiff has failed to exhaust administrative remedies as to her disparate impact claim. Defendant's Motion to Dismiss is GRANTED as to Count IV of the Complaint.

**The Merits**

Assuming *arguendo* that Plaintiff successfully exhausted administrative remedies

for the claims of retaliation and disparate impact, Defendant also argues that Plaintiff has failed to state claims of (1) discrimination of the basis of sex in violation of Title VII (Count I); (2) discrimination in violation of the ADA (Count II); retaliation in violation of Title VII (Count III); disparate impact on the basis of sex in violation of Title VII (Count IV); and wrongful termination under Maryland law (Count V). *See* ECF No. 17. I agree and address each of these arguments in turn.

Retaliation (Count III)

APL argues that Plaintiff's retaliation claim fails as Plaintiff has not pleaded that she engaged in any protected activity. ECF No. 17. In particular, APL alleges that Plaintiff's request for reasonable accommodations does not constitute protected activity under Title VII. *Id.* I agree. To bring a claim of retaliation under Title VII, plaintiffs may prove violations through direct and indirect evidence of retaliatory animus, or through the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Foster v. Univ. Md.-E. Shore*, 787 F.3d 243, 249 (4th Cir. 2015); *see also Karpel v. Inova Health Sys. Servs.*, 134 F.3d 1222, 1228 (4th Cir. 1998) ("The series of proofs and burdens outlined in *McDonnell Douglas* apply to retaliation claims."). Under the burden-shifting framework, a plaintiff must first offer a *prima facie* case of retaliation. *Walton v. Harker*, 33 F.4th 165, 177 (4th Cir. 2022). To establish a *prima facie* case of retaliation, a plaintiff must show: "(i) 'that [she] engaged in protected activity,' (ii) 'that [her employer] took an adverse action against [her],' and (iii) 'that a causal relationship existed between the protected activity and the adverse employment activity.'" *Sempowich v. Tactile Sys. Tech.,*

*Inc.*, 19 F.4th 643, 654-55 (4th Cir. 2021) (quoting *Foster*, 787 F.3d at 250 (alterations in *Foster*)).

To satisfy the first element of a *prima facie* case of retaliation, a plaintiff must make a showing that they either (1) engaged in opposing a practice prohibited under Title VII or (2) made a charge, testified, assisted, or participated in an investigation, proceeding, or hearing under Title VII. *See Pitter v. Cmty Imaging Partners, Inc.*, 735 F.Supp.2d 379, 395 (D.Md. 2010). In the instant case, Plaintiff argues that she requested a reasonable accommodation to delay the receipt of the vaccination and was wrongly terminated in retaliation. ECF No. 1 at ¶¶ 66–68. However, Plaintiff is incorrect in her assertion that the request for reasonable accommodation constituted protected activity, as this Court has previously found that requests for accommodation alone are not protected activity under Title VII. *See Parker*, 2021 WL 5840949, at *16 (granting motion to dismiss Title VII retaliation claim because a reasonable accommodation request associated with a high-risk pregnancy, but without an accompanying complaint of discrimination, is not a protected activity). In *Parker*, this Court explained that:

> A simple, unadorned request for accommodation involves no opposition to any suspected violation of Title VII or discriminatory behavior. In fact, it does not even involve any allegation of such behavior. It merely requests an accommodation on the part of the employer. And, Title VII does not generally require accommodation by an employer, so an employer's failure to grant the request will not, by itself, constitute a violation of Title VII.

*Parker*, 2021 WL 5840949, at *22 (internal citations omitted).

Plaintiff has not alleged that she engaged in any protected activity, and therefore Plaintiff has failed to plead a *prima facie* case of retaliation. As such, even

9

if Plaintiff had exhausted her administrative remedies as to the claim of retaliation,

the Court would still find that dismissal of Count III is appropriate.

Disparate Impact on the Basis of Sex (Count IV)

APL subsequently argues that in Count IV, Plaintiff's allegations fail to state a claim

of disparate impact under Title VII. ECF No. 17. I agree. Disparate impact claims

"involve[] employment practices that are facially neutral in their treatment of different

groups but that in fact fall more harshly on one group than another and cannot be justified

by business necessity." *Wright v. Nat'l Archives & Rec. Serv.*, 609 F.2d 702, 711 (1979)

(quoting *Int'l Brotherhood of Teamsters v. U.S.*, 431 U.S. 324, 335 n.15 (1977). "To

establish a *prima facie* case of disparate impact discrimination under Title VII, a plaintiff

must 'show that the facially neutral employment practice had a significantly discriminatory

impact.'" *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 265 (4th Cir.

2005) (quoting *Walls v. City of Petersburg*, 895 F.2d 188, 191 (4th Cir. 1990)). Critically,

there must be "proof of an employment policy or practice which . . . imposes a substantially

disproportionate burden upon a claimant's protected group as compared to a favored group

within the total set of persons to whom it is implied." *Wright*, 609 F.2d at 711.

Plaintiff has alleged no such proof. In support of her contention that pregnant

women are disparately impacted by the vaccination policy, Plaintiff merely recites in a

conclusory fashion that "[p]regnant women who make decisions not to receive a vaccine,

pursuant to their physician's advice, are disparately impacted by APL's mandatory

vaccination policy." ECF No. 1 at ¶ 76. Plaintiff also alleges that "APL accepted

approximately 50% of the accommodation requests from employees and approximately

66% of accommodation requests for religious beliefs." *Id.* at ¶ 36. Even accepting this allegation as true and construing it in the light most favorable to Plaintiff, Plaintiff still fails to plausibly allege that pregnant women were disparately impacted by the policy. The statistics that Plaintiff offers up regarding the granted accommodation requests do nothing to illustrate how, if at all, pregnant women were impacted relative to all the other employees who were subject to the policy. Accordingly, I find that Plaintiff has failed to plead a *prima facie* case of disparate impact. Therefore, even if Plaintiff had exhausted her administrative remedies as to her disparate impact claim, the Court would still find that dismissal of Count IV is appropriate.

Discrimination on the Basis of Sex (Count I)

APL argues that Count I of the Complaint should be dismissed because Plaintiff fails to state a plausible claim of sex discrimination under Title VII. ECF No. 17. While I agree that Plaintiff has failed to state a claim, I disagree with APL's reasoning. APL appears to read Plaintiff's Complaint as alleging a claim for sex-based termination, which differs from a general claim of sex-based discrimination under Title VII. *Id.*; *see Young v. Giant Food Stores, LLC*, 108 F. Supp. 3d 301, 312 (D.Md. 2015) (laying out the elements of a *prima facie* claim of sex/gender-based termination). I read Plaintiff's Complaint as more clearly alleging a general claim of sex-based discrimination and will analyze it as such. *See* ECF 1 at ¶¶ 41–51.

Generally, "at trial a plaintiff may establish a discrimination claim under Title VII through two avenues of proof." *Parker v. Children's Nat'l Med. Ctr, Inc.*, No. ELH-20-3523, 2021 WL 5840949, at *8 (D.Md. Dec. 9, 2021) (citing *Thomas v. Delmarva Power*

& *Light Co.*, 715 Fed App'x 301, 302 (4th Cir. 2018) (per curium)). The plaintiff may either offer direct or indirect evidence of discrimination or may follow the burden-shifting approach articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 (1973). *See id.* To state a *prima facie* claim of discrimination under Title VII, the plaintiff must allege that (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class. *Id.* (citing *Goode v. Cent. Va. Legal Aid Soc., Inc.*, 807 F.3d 619, 626 (4th Cir. 2015).

Here, Defendant does not contest that Plaintiff, a pregnant woman who was terminated from her position, is a member of a protected class and that she suffered an adverse employment action. ECF No. 17. Defendant does argue that Plaintiff cannot establish a *prima facie* case for discrimination because she fails to plead facts showing that she was performing her job duties at a level that met APL's legitimate expectations at the time of her separation. *Id.* As to this element, Plaintiff alleges that "[a]t the time of her wrongful termination, Plaintiff was fulfilling her expectations and obligations as an employee while working from home full time" and that "Plaintiff had the ability to perform all essential and necessary functions of her employment from home." ECF No. 1 at ¶¶ 48–49. These assertions are wholly conclusory and will not be credited. Plaintiff's Complaint is otherwise devoid of any other facts alleging that she was fulfilling her employer's legitimate expectations. *See* ECF No. 1.

Similarly, Plaintiff provides the Court with only threadbare facts to support her contention that she received different treatment from similarly situated employees outside

of the protected class. She simply asserts that "APL accepted approximately 50% of the accommodation requests from employees and approximately 66% of accommodation requests for religious beliefs." *Id.* at ¶ 36. Without any further detail, there is no way for the court to assess if those employees who were granted an accommodation were similarly situated to Plaintiff. (*See Parker*, 2021 WL 5840949, at *11 ("'Where a plaintiff attempts to rely on comparator evidence to establish circumstances giving rise to an inference of unlawful discrimination,' the plaintiff must demonstrate that the comparator is similarly situated in all relevant respects." *Swaso v. Onslow Cnty. Board of Ed.*, 698 Fed. App'x 745, 748 (4th Cir. 2017))). I find that Plaintiff has failed to plead a *prima facie* case of sex-based discrimination in violation of Title VII and Defendant's Motion to Dismiss is GRANTED as to Count I of the Complaint.

Disability Discrimination in Violation of the ADA (Count II)

As I construe the Complaint, in Count II, Plaintiff asserts that her high-risk pregnancy diagnosis constitutes a cognizable disability and that APL discriminated against her by denying her a reasonable accommodation. ECF No. 1 at ¶¶ 54–58. Defendant misunderstands Count II of the Complaint and asserts that Plaintiff has failed to allege a plausible claim of general disability discrimination under the ADA. *See* ECF No. 17. Though I depart from APL's reasoning, I agree that Plaintiff has failed to plead a *prima facie* case.

To make out a failure to accommodate case under the ADA, a plaintiff must prove "(1) that she had a disability within the statutory meaning; (2) that the employer knew of

her disability; (3) that a reasonable accommodation would permit her to perform the essential functions of the position; and (4) that the employer refused to make the accommodation." *Perdue v. Sanofi-Aventis U.S., LLC*, 999 F.3d 954, 959 (4th Cir. 2021) (quoting *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013)).

The ADA defines "disability" in regard to an individual as "a physical or mental impairment that substantially limits one or more major life activities of such individual; a record of such an impairment; or being regarded as having such an impairment." 42 U.S.C.A. § 12102(1)(A)–(C). However, federal courts have consistently held that pregnancy is not a disability under the ADA. *See* Parker, 2021 WL 5840949, at *16. None the less, courts have also found that "while pregnancy alone is insufficient to state a claim under the ADA, complications related to pregnancy may be found to be impairments that substantially limit a major life activity such that they constitute disabilities." *Id.* (quoting *Kande v. Dimensions Health Corp.*, GJH-18-2306, WL 7054771, at *4 (D.Md. Dec. 2, 2020). The EEOC has provided additional guidance on this issue in U.S. EQUAL EMP'T OPPORTUNITY COMM'N, EEOC CVG-2015-1, ENFORCEMENT GUIDANCE ON PREGNANCY DISCRIMINATION AND RELATED ISSUES (June 25, 2015), https://www.eeoc.gov/laws/guidance/enforcement-guidance-pregnancy-discrimination-and-related-issues#_ftnref142 (internal citations omitted):

> Although pregnancy itself is not an impairment within the meaning of the ADA, and thus is never on its own a disability, some pregnant workers may have impairments related to their pregnancies that qualify as disabilities under the ADA, as amended. An impairment's cause is not relevant in determining whether the impairment is a disability. Moreover, under the amended ADA, it is likely that a number of pregnancy-related impairments

14

that impose work-related restrictions will be substantially limiting, even though they are only temporary.

Therefore, the question before the Court is whether Plaintiff has plausibly alleged facts that support the claim that her pregnancy-related complications qualify as a disability under the ADA's standard definition. *See Parker*, 2021 WL 5840949, at *16. "An individual alleges he has an actual disability when he alleges (1) a physical or mental impairment that (2) substantially limits (3) one or more major life activities." *Id.* (quoting *Miller v. Md. Dep't Nat. Res.*, 813 Fed. App'x 869, 875 (4th Cir. 2020)). "For a major life activity to be 'substantially limit[ed],' the impairment need only 'substantially limit[ ] the ability of an individual to perform a major life activity as compared to most people in the general population. An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting.'" *Miller*, 813 Fed. App'x at 875 (quoting 29 C.F.R. § 1630.2(j)(1)(ii)). "Major life activities" include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 USCA § 12102(2)(A).

Returning to the present case, Plaintiff alleges that "due to her age, elevated blood sugar, anxiety, depression, and a hypothyroid condition," her pregnancy was high-risk. ECF No. 1 at ¶ 20. Plaintiff therefore adequately alleges the existence of a disability. However, Plaintiff provides no support for the contention that her impairment substantially limited one or more major life activities. To the contrary, she merely puts forth the conclusory assertion that "[her] high-risk pregnancy is a disability and, as a result,

interfered with her ability to complete routine life tasks on a daily basis." *Id.* at ¶ 21. This is insufficient. Therefore, Plaintiff has failed to plead a *prima facie* case of failure to accommodate under the ADA and Defendant's Motion to Dismiss is GRANTED as to Count II of the Complaint.

Wrongful Termination Under Maryland Law (Count V)

Finally, APL argues that the Court should dismiss Plaintiff's wrongful termination claim arising under Maryland common law. ECF No. 17; *see* ECF No. 1 at ¶¶ 81–86. Plaintiff contends that "APL's policy of mandatory vaccination violates Maryland['s] public policy of a woman's right to choose and to have the freedom to make medical decisions for her unborn child." ECF No. 1 at ¶ 83. She further states that "Plaintiff's unborn child is not an employee of APL and APL has no authority to force a vaccination over medical advice provided to Plaintiff." *Id.* at ¶ 84.

"The tort of wrongful termination is one exception to the principle that an at-will employee may be discharged for any reason, or no reason at all." *Symeonidis v. Paxton Capital Grp, Inc.,* 220 F. Supp. 2d 478, 483 (D. Md. 2002) (*citing Adler v. American Standard Corp.*, 291 Md. 31, 45 (1981). The elements are: "(1) that the employee was discharged; (2) that the basis for the discharge violated some clear mandate of public policy; and (3) that there is a nexus between the employee's conduct and the employer's decision to fire the employee." *Id.* What exactly constitutes "public policy" vis-à-vis wrongful termination is not clearly defined under Maryland law. *Adler v. American Standard Corp.*, 291 Md. 31, 45 (1981). However, most jurisdictions that recognize the

16

tort of wrongful termination "have to some extent relied on statutory expressions of public policy as a basis for the employee's claim." *Id.* Maryland courts have relied upon "legislative enactments, prior judicial decisions or administrative regulations when determining the public policy" of the state. *Id.*

Here, Plaintiff argues that a woman's "right to choose" is the public policy that has been violated. ECF 1 at ¶ 83. Plaintiff provides no citation or any further guidance to the Court as to what, if any, legislation, judicial decision, or regulation she is referencing. Without more, it is impossible to find that "the basis for the discharge violated some clear mandate of public policy." *Symeonidis*, 20 F. Supp. 2d at 483; *see also Adler*, 291 Md. at 46 (holding that "bald allegations. . .do not provide a sufficient factual predicate for determining whether any declared mandate of public policy was violated.") As such, Plaintiff has failed to plead a *prima facie* case of wrongful termination under Maryland law. Defendant's Motion to Dismiss is GRANTED as to Count V of the Complaint.

<u>CONCLUSION</u>

For the reasons set forth in this Memorandum Opinion, Defendant's Motion (ECF No. 17) is GRANTED. A separate Order will follow.

Date: 28 September 2023

A. David Copperthite
United States Magistrate Judge

17